# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 72

APRIL TERM, A.D. 2017

June 15, 2017

SHAUN KENNETH HAMILTON,

Appellant
(Defendant),

v.

S-16-0214

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable Daniel L. Forgey, Judge*

*Representing Appellant:*
Office of the State Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel. Argument by Ms. Olson.

*Representing Appellee:*
Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Eva La, Assistant Attorney General. Argument by Ms. La.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]   A jury found Shaun Kenneth Hamilton guilty of five counts of sexual assault and sexual abuse of a minor for acts involving two victims.  He appeals his conviction, claiming that there was prosecutorial misconduct amounting to cumulative error when the prosecutor, during closing argument, defined the burden of proof, denigrated Mr. Hamilton's defense, and shifted the burden of proof.  We affirm.

## *ISSUE*

[¶2]   We rephrase the issue as follows: Was Mr. Hamilton denied his right to a fair trial by the cumulative error of two or more instances of prosecutorial misconduct?

## *FACTS*

[¶3]   There are two victims in this case, JP and KB.  Mr. Hamilton is KB's stepfather, and lived with KB and her mother.  KB testified that in 2015, when she was fourteen, Mr. Hamilton sexually assaulted her in her bedroom.  The following day, KB went to school and told a friend about the incident, and the friend reported it to the school principal.  The principal called the Wyoming Department of Family Services (DFS), and then called KB out of class.  After speaking to the principal about the incident, KB left with a DFS caseworker.  The DFS caseworker took KB to the Children's Project Center for a forensic interview and then to the hospital for a sexual assault kit examination.  During the sexual assault kit exam, the nurse collected oral swabs from KB and DNA swabs from KB's abdomen.  The Casper Police Department (CPD) obtained a search warrant for KB's residence, where they collected KB's mattress topper from her bed, a blanket, a pair of panties, a pair of sports pants, a black shirt, and a white towel.  CPD also served Mr. Hamilton with a search warrant to perform a biological evidence kit exam on him.  DNA tests confirmed that DNA collected from KB's abdomen swabs and mattress topper was consistent with Mr. Hamilton's semen, and Mr. Hamilton's penile swabs were consistent with the DNA profiles of both KB and Mr. Hamilton.

[¶4]   When it began investigating KB's case, CPD re-opened an earlier case involving charges of sexual assault of JP, the child of a woman Mr. Hamilton dated in 2009.  JP testified that Mr. Hamilton sexually assaulted her three different times when she was five or six years old.  JP's mother reported the incidents to DFS and CPD,  but no charges were filed against Mr. Hamilton at that time.

[¶5]   The State combined KB's and JP's cases, and charged Mr. Hamilton with one count of first-degree sexual assault in violation of Wyo. Stat. Ann. §§ 6-2-302(a)(i) and 6-2-306(a)(i), one count of first-degree sexual abuse of a minor in violation of Wyo. Stat. Ann. §§ 6-2-314(a)(iii) and (b), for the incident related to KB; and one count of second-degree sexual abuse of a minor in violation of Wyo. Stat. Ann. §§ 6-2-314(a)(i)

and (c), and two counts of second-degree sexual abuse of a minor in violation of Wyo. Stat. Ann. §§ 6-2-315(a)(ii) and (b) for the incidents related to JP.

[¶6]    After a four-day trial, the jury convicted Mr. Hamilton on all five counts. On the two counts related to KB, he was sentenced to a term of not less than 32 years nor more than 36 years, and a term of not less than 10 years nor more than 15 years, to be served concurrently. On the three counts related to JP, he was sentenced to not less than 18 years nor more than 20 years on each count, to be served concurrently and consecutively to the counts related to KB. Mr. Hamilton timely filed his notice of appeal. Additional facts, testimony, and argument will be set forth below, as necessary.

## STANDARD OF REVIEW

[¶7]    Mr. Hamilton failed to object to the prosecutor's statements during his closing argument at trial. Our review is therefore limited to a search for plain error. *Watts v. State*, 2016 WY 40, ¶ 6, 370 P.3d 104, 106 (Wyo. 2016). "Normally, we would determine whether each incident of alleged misconduct by the prosecutor caused sufficient prejudice to require a reversal." *Id*. at ¶ 7, 370 P.3d at 106. Mr. Hamilton, however, argues that it was the cumulative effect of all three instances of alleged prosecutorial misconduct that denied him his right to a fair trial. Our plain error review is therefore: 1) whether the record is clear about each incident alleged to be misconduct; 2) whether each instance of alleged misconduct actually transgressed a clear and unequivocal rule of law; and 3) if two or more instances of alleged misconduct violate clear and unequivocal rules of law, whether the cumulative effect of the misconduct prejudiced Mr. Hamilton to such an extent that his trial was other than fair and impartial. *Id*.

## DISCUSSION

### *Was Mr. Hamilton denied his right to a fair trial by the cumulative error of two or more instances of prosecutorial misconduct?*

[¶8]    Mr. Hamilton contends that there were three instances of prosecutorial misconduct during the prosecutor's closing argument: 1) the prosecutor defined reasonable doubt for the jury; 2) the prosecutor denigrated the defense; and 3) the prosecutor shifted the burden of proof from the State to the defendant. Prosecutorial misconduct is "[a] prosecutor's improper or illegal act (or failure to act), esp[ecially] involving an attempt to persuade the jury to wrongly convict a defendant or assess an unjustified punishment." *Watts*, 2016 WY 40, ¶ 8, 370 P.3d at 107 (quoting *Craft v. State*, 2013 WY 41, ¶ 13, 298 P.3d 825, 829 (Wyo. 2013)). "Allegations of prosecutorial misconduct are reviewed by reference to the entire record and hinge on whether a defendant's case has been so prejudiced as to constitute denial of a fair trial." *Talley v. State*, 2007 WY 37, ¶ 9, 153 P.3d 256, 260 (Wyo. 2007). Although it was prosecutorial misconduct for the prosecutor

2

to attempt to define reasonable doubt and to suggest that Mr. Hamilton carried any burden of proof, Mr. Hamilton failed to prove cumulative error. Applying our standard of review, we will find that Mr. Hamilton was not prejudiced to such an extent that his trial was anything other than fair and impartial.

## A.  Reasonable doubt

[¶9]    Mr. Hamilton argues that the prosecutor attempted to define reasonable doubt to the jury, in violation of the law, when the prosecutor made the following statements during his closing argument:

> Before I get to the overwhelming evidence against [Mr. Hamilton] in this case, I want to discuss with you the burden of proof. ***I want to talk to you about what it is and also what it is not***. It is proof beyond a reasonable doubt, a burden the State welcomes. We welcome that. We're talking about a man's freedom. We should be held to that burden, and we ask you to hold us to that burden. But it is not proof beyond any possible doubt. You heard a lot of possibilities coming from [defense counsel]. Well, could it have possibly been this, could it have possibly been that. The burden is not proof beyond any possible doubt. The burden of proof is beyond a reasonable doubt. ***And a reasonable doubt doesn't just come from any lame excuse the defense can come up with to try to explain the overwhelming evidence in this case.*** It only comes from a reasonable argument, one that makes sense, one that matches with your common sense.
>
> . . . .
>
> They argue masturbation, because it's a penetration womb [sic]. It started out with a bike; but when that got debunked, it became masturbation. ***Well, remember, we're not talking about what is possible. We're talking about what is reasonable***. Also, we don't consider evidence in isolation. We take it all together. So look at the whole picture.

(Emphasis added.)   The record is clear about the alleged incident; therefore, Mr. Hamilton has met the first prong of the plain error test. We next address whether the prosecutor's statements transgressed a clear and unequivocal rule of law.

[¶10]  A prosecutor is afforded "[g]reat latitude in arguing the case to the jury[,] . . . [h]owever, there are boundaries the prosecutor may not cross." *Carroll v. State*, 2015 WY 87, ¶ 32, 352 P.3d 251, 259 (Wyo. 2015) (internal quotation marks and citations

omitted). This Court recently addressed the issue of defining reasonable doubt in *Watts*, 2016 WY 40, ¶ 22, 370 P.3d at 112. Recognizing the inconsistencies in our precedent, we provided a detailed analysis of prior case law and clarified that it is error for a prosecutor to attempt to define 'reasonable doubt' for the jury. *Id*. Here, the prosecutor's comments are similar to those the prosecutor made in *Watts*:

> Ladies and gentlemen, the State does have to prove its case beyond a reasonable doubt, but it is not beyond all doubt. It is not an impossible burden. It is the same burden in every State in the nation, Federal Court, State Courts. We know people are convicted fairly frequently on this burden of proof beyond a reasonable doubt.
>
> . . . .
>
> But the doubt has to be reasonable. It has to be based on what arose out of this trial. It can't be a hunch it [sic]. It can't be well a possibility.
>
> . . . .
>
> A hunch is [not] a reasonable doubt. A vague possibility is not reasonable doubt.

2016 WY 40, ¶ 13, 370 P.3d at 108. We held that the prosecutor in *Watts* "crossed well into the territory of defining reasonable doubt when he stated: 'But the doubt has to be reasonable. It has to be based on what arose out of this trial. It can't be a hunch it [sic]. It can't be well a possibility.'" *Id*. at ¶ 22, 370 P.3d at 111. Similarly, prosecutorial misconduct occurred here when the prosecutor attempted to define reasonable doubt by stating: "The burden is not proof beyond any possible doubt;" "Well, remember, we're not talking about what is possible. We're talking about what is reasonable."

[¶11] This Court issued *Watts* 56 days after the jury returned its verdict in Mr. Hamilton's case. Although it was not law at the time of Mr. Hamilton's trial, the parameters on which it was decided were. We find the prosecutor violated a clear and unequivocal rule of law when he defined reasonable doubt for the jury during his closing argument, rather than merely explaining "that the burden of proof does not require the prosecutor to establish guilt to an absolute certainty." *Watts*, 2016 WY 40, ¶ 21, 370 P.3d at 111 (citing *Solis v. State*, 2013 WY 152, ¶ 46, 315 P.3d 622, 632 (Wyo. 2013) ("To be sure, it is error for a prosecutor to attempt to define 'reasonable doubt' for the jury.")).

4

[¶12]  Mr. Hamilton argues that it is only when this error is considered with two other alleged instances of misconduct that it proves he was prejudiced to such an extent that his trial was not fair and impartial.  As a result, we analyze whether the alleged instances of misconduct collectively constitute cumulative error.  *See infra* ¶¶ 20-21.  We turn next to Mr. Hamilton's argument that the prosecutor denigrated the defense.

## B.  Denigration of the defense

[¶13]  Mr. Hamilton contends that the prosecutor committed misconduct when he "repeatedly on the record ridiculed the defense."  Mr. Hamilton references the following statements made by the prosecutor during his closing:

> I'll go over the problems with their excuses here in a minute, because there are a lot of them.  But the bottom line is the physical, scientific evidence in this case supports the victim [KB].  So what do they do?  ***They drag her through the mud***.  They talk about forged checks and trips to the principal's office, typical teenage junk.  But that's nothing more than an effort to get you to try to ignore the cold, hard facts of this case. . . .
>
> . . . .
>
> . . . The defense is essentially arguing that these two girls came into this courtroom and framed this defendant out of the clear blue sky. . . .  ***That's not reasonable.  It's absurd***.  And that's before we get to the corroboration.
>
> . . . .
>
> Ladies and gentlemen of the jury, that's not reasonable. That is ***fundamentally ridiculous***. How would [KB] know [Mr. Hamilton's] sperm was on her comforter and her stomach unless, one thing, she was there when [Mr. Hamilton] put it there. . . .
>
> . . . .
>
> . . . These sperm are microscopic.  Only the crime lab could link it to [Mr. Hamilton].  And they want you to believe that this 14-year-old girl somehow knew it and framed him. That's not reasonable.  That's ***so off-the-wall ridiculous it's beyond belief***. . . .
>
> . . . .

5

> ***The so-called alibi is nonsense*** . . . . ***So the alibi argument is nonsense***.
>
> . . . .
>
> I told you they would not be able to explain how [KB] knew [Mr. Hamilton's] semen was on her stomach. Oh, they tried to explain the -- the comforter by saying, [w]ell, you know, she knows what semen is. Yeah. So she kept sleeping on that stain. For how many years? She was begging to sleep on that futon knowing that stain was there. So they tried to say that, which is ***just a very bizarre, out-there explanation of that***.

(Emphasis added.)

[¶14] It is prosecutorial misconduct to "launch personal attacks against defense counsel to inflame the passions and prejudices of the jury." *McGinn v. State*, 2015 WY 140, ¶ 51, 361 P.3d 295, 307 (Wyo. 2015) (Fox, J., specially concurring) (quoting *Lafond v. State*, 2004 WY 51, ¶ 39, 89 P.3d 324, 336-37 (Wyo. 2004)). The prosecutor's comments are similar to those the prosecutor made in *Carroll*:

> So how much of this closing [argument] by counsel for the Defense was about [the victim]? Not a lot. Because their case, their case, ladies and gentlemen, is about distraction and diversion. They want to distract you from the testimony of [the victim]. And they want to divert you from those things.
>
> . . . .
>
> . . . [a] lot of stuff on the floor of this courtroom and [is] hoping you don't sniff through it. But you will. Because this case isn't about those things. . . . This case is about [the victim] and what he did to her, what she told you happened to her at his hands when she was just 14 and 15 years old.

2015 WY 87, ¶ 41, 352 P.3d at 261. We found the comments in *Carroll* to be related to the prosecution's view of the defense case, and not personal attacks on the defense counsel. *Id*. at ¶ 44, 352 P.3d at 261. Similarly, the prosecutor's comments in this case were not personal attacks on defense counsel and were not intended to inflame the passions and prejudices of the jury. "In presenting closing argument, the prosecutor is entitled to reflect upon the evidence and to draw reasonable inferences from that evidence

in order to assist the jury in its function." *English v. State*, 982 P.2d 139, 148 (Wyo. 1999). The prosecutor's remarks were related to the prosecution's view of the defense's case, and do not amount to prosecutorial misconduct. Though ill-advised, the comments did not transgress a clear and unequivocal rule of law. We find no plain error, and turn next to Mr. Hamilton's argument that the prosecutor shifted the burden of proof from the State to Mr. Hamilton.

## C.  Burden of proof

[¶15]  Mr. Hamilton asserts the prosecutor shifted the burden of proof from the State to Mr. Hamilton when the prosecutor made the following statements:

> Ladies and gentleman of the jury, there's an old saying in the law: When the law is on your side, you pound on the law; when the facts are on your side, you pound on the facts; when neither is on your side, you pound on the victim.
>
> ***They can't explain this in any reasonable manner. They can't explain this in any reasonable manner. And most of all, they can't explain this in any reasonable manner.*** Oh, they made some excuses. . . .
>
> . . . .
>
> . . . The only way she knows it's his sperm is if she's there when he put it there just like she described. ***Until they come up with a reasonable argument on that point -- and they won't, not a reasonable one -- there's no reasonable doubt.***
>
> . . . .
>
> And then they try to say DNA is not that big a deal. It's not that big a deal. ***Well, it's a big deal when you can't explain how [KB] knew it was there. And they can't. That makes it an even bigger deal.***
>
> . . . .
>
> ***I told you they wouldn't be able to explain it. They don't have reasonable explanation for it. I told you they would not be able to explain how [KB] knew [Mr. Hamilton's] semen was on her stomach.*** . . .

7

> *Without a reasonable explanation for that, ladies and*
> *gentlemen of the jury, there's no hole in that box*. There's
> no reasonable doubt.

(Emphasis added.) The challenged incident clearly appears in the record, and so we consider whether it violated a clear and unequivocal rule of law.

[¶16] It is well settled that "the State bears the burden of proof in a criminal case, and that the prosecutor may not, during argument, attempt to shift that burden to the defendant." *Harris v. State*, 2008 WY 23, ¶ 17, 177 P.3d 1166, 1171 (Wyo. 2008); *see also Collins v. State*, 2015 WY 92, ¶ 16, 354 P.3d 55, 59 (Wyo. 2015) ("[P]rosecutors should not suggest a defendant carries any burden of proof."); *Phillips v. State*, 835 P.2d 1062, 1072-73 (Wyo. 1992). In *Schafer v. State*, the defendant claimed, among other issues, that his motion for a new trial should have been granted because prosecutorial misconduct occurred when the prosecutor stated, "if there was some explanation for it, they could have put it on." 2008 WY 149, ¶¶ 25-26, 197 P.3d 1247, 1252 (Wyo. 2008) (*superseded by statute, Cecil v. State*, 2015 WY 158, 364 P.3d 1086 (Wyo. 2015)). Defense counsel objected to the statement at trial, which provided the district court with the opportunity to cure the alleged misconduct. The district court, agreeing that the statement was impermissible, admonished the prosecutor, ordered that the statement be stricken from the record, and instructed the jury that defendant had no burden to present any evidence in the case. *Id.* While reasserting the principle that it is error for a prosecutor to suggest that the defendant has the burden of proof, we applied the rule that a jury is presumed to follow a court's curative instruction and found no abuse of discretion. *Id.* at ¶ 26, 197 P.3d at 1252.

[¶17] In *Seymore v. State*, 2007 WY 32, ¶ 18, 152 P.3d 401, 408 (Wyo. 2007) (*abrogated on other grounds by Granzer v. State*, 2008 WY 118, 193 P.3d 266 (Wyo. 2008)), during voir dire, the prosecutor stated:

> If the defense has evidence they want you to consider in
> deciding this case, then they should put it to you. They
> should bring it to your attention. They should bring it to court
> and show it to you, or have someone testify about it, that it's
> not the State's role to present that evidence to you.

Then, in his closing argument, the prosecutor used a demonstrative exhibit depicting evidence that the prosecutor believed should have been brought before the jury by the defendant. *Id.* We found that "[t]he prosecutor t[elling] the jury during *voir dire* and in closing argument that the defendant 'should' bring any exculpatory evidence into court and present it to the jury" improperly shifted the burden to the defendant and, combined with several other prosecutorial transgressions, justified remanding the case for a new trial. *Id.* at ¶¶ 20-22, 152 P.3d at 410. Thus, the law in Wyoming is clearly established: a

prosecutor may not argue that the defendant should have put on evidence to explain a missing fact or theory because such an argument improperly shifts the burden of proof to the defendant.

[¶18]  Here, the prosecutor made multiple statements suggesting that Mr. Hamilton had to explain the evidence when he had no burden at all.  The prosecutor was not "merely comment[ing] on the evidence presented, the lack of Hamilton's evidence, and the uncontroverted evidence" as the State suggests.  The prosecutor went beyond commenting on the evidence when he added statements such as "They can't explain this in any reasonable manner;" "Until they come up with a reasonable argument on that point;" and "I told you they wouldn't be able to explain it."  The prosecutor's statements regarding the burden of proof transgressed a clear and unequivocal rule of law, a second instance of prosecutorial misconduct in this matter.  It is therefore necessary to address Mr. Hamilton's claim of cumulative error.

## D.  Cumulative error

[¶19]  Cumulative error occurs when "two or more individually harmless errors ha[ve] the potential to prejudice the defendant to the same extent as a single reversible error." *Watts*, 2016 WY 40, ¶ 23, 370 P.3d at 112 (quoting *Guy v. State*, 2008 WY 56, ¶ 45, 184 P.3d 687, 701 (Wyo. 2008).  "In conducting a cumulative error evaluation, we consider only matters that we have determined to be errors."  *Guy*, 2008 WY 56, ¶ 45, 184 P.3d at 701.  We reverse a conviction only when the accumulated effect of the errors "constitutes prejudice and the conduct of the trial is other than fair and impartial."  *Watts*, 2016 WY 40, ¶ 23, 370 P.3d at 112 (quoting *Alcala v. State*, 487 P.2d 448, 462 (Wyo. 1971)).

[¶20]  While it was improper for the prosecutor to attempt to define reasonable doubt and suggest to the jury that Mr. Hamilton had any burden of proof, the accumulated effect of these errors was not prejudicial.  We consider the prosecutor's remarks during closing argument "in the context of the entire argument," *Szymanski v. State*, 2007 WY 139, ¶ 27, 166 P.3d 879, 886 (Wyo. 2007), and in the context of the entire trial.  *Phillips v. State*, 2007 WY 25, ¶ 9, 151 P.3d 1131, 1134 (Wyo. 2007).  Throughout the trial the jury was reminded that the burden of proof rested with the State.  Moreover, the State produced overwhelming evidence establishing Mr. Hamilton's guilt.  The State called eleven witnesses, including the victims naming Mr. Hamilton as their assailant, medical personnel who described the severity of KB's injuries, and experts on the DNA evidence.  The State also presented uncontroverted DNA evidence.  The State's evidence was strong, the errors by the prosecutor were confined to the closing argument, and the accumulated effect of those errors does not rise to the level of reversible error.  Based on the entire context of the trial, we do not find that Mr. Hamilton was prejudiced by the improper remarks; therefore, his cumulative error claim fails and we affirm his convictions.

## *CONCLUSION*

[¶21] The prosecutor did not denigrate the defense during closing argument. The prosecutor's attempt to define "reasonable doubt" and statements regarding the burden of proof constituted prosecutorial misconduct. However, the prosecutor's statements did not cumulatively prejudice Mr. Hamilton. We affirm Mr. Hamilton's convictions.